19-2799 from the District of Minnesota, United States v. Pisanu Sukhtipyaroge. All right, Mr. Oscar, we'll hear from you first. Thank you, Your Honor. This is an appeal of a restitution order the district court granted for the accomplice to a visa fraud case. I thought of the many ways that this argument could go, I thought I would address what I believe is the heart of the government's argument as to justifying the award, which I believe is that this visa fraud, as committed by Mr. Sukhtipyaroge, involved a secret intent on his part or a motivation on his part to get A.M., the purported victim, into the United States in order that he could force him into labor and force him into a sexual relationship, and that that was his intent and motivation from the very beginning. And the government then argues that the circumstances of this motivation or this intent make the visa fraud that was committed an offense against property because the intent or the hidden agenda of the appellant was to cheat the purported victim out of wages or to recover some of the wages that were paid to him improperly. The problem with this argument, this focus by the government, is that there was no evidence in the record of any motivation or plan at the time that they were planning the visa fraud and executing the visa fraud to force A.M. into labor or to force him into a sexual relationship. The parties, or I'm sorry, the two accomplices, Mr. Sukhtipyaroge and A.M., executed a visa fraud scheme which involved A.M. lying about his intentions to work for wages once he got to the United States, a lie that A.M. intended to attend a particular school while he was here, and a lie that A.M. was staying only for as long as his education, his student visa lasted, and that he was not intending to try to stay after the visa expired. There was no allegation in the indictment that Mr. Sukhtipyaroge had this agenda or this motivation to bring A.M. here for purposes of forced labor or forced sexual relationship. There was no admission or stipulation by Mr. Sukhtipyaroge that he intended to, that he brought A.M. here in order to force him into labor or to force him into sex. The evidence of an intent by A.M. to have employment once he came here in violation of a student visa was an exchange of messages between Mr. Sukhtipyaroge and A.M. in which Mr. Sukhtipyaroge mentioned that his, Mr. Sukhtipyaroge's son might hire A.M. at his restaurant once A.M. was in the United States. Counsel, I want to ask you a question about the record here, which is, I wonder if all of this was waived or invited error below. And the reason why I say that is the plea agreement says that your client needs to pay restitution. And at least in one of the memoranda, it says that the victim here, A.S.M., was, quote, entitled to some restitution for work he actually performed. And so it appears to me, from what I can tell, the first time this is actually addressed is when the district court addresses it. But it appears throughout the proceedings that the position below was he was entitled to restitution for any funds that he didn't get paid for the work he did. Originally, it was an evolving kind of a, an evolving theory of restitution, I believe, by both sides in the district court. I did not represent Mr. Sukhtipyaroge below. But once the district court became concerned about its ability to award restitution and A.M.'s true status as a victim here and invited further briefing and litigation concerning that, ultimately, the defense came to the conclusion, consistent with his plea agreement, that there was restitution that was owed, but it was for the amounts of money that A.M. had to reimburse Mr. Sukhtipyaroge for once he got here. Monies for his support in school that Mr. Sukhtipyaroge had promised the United States and the Immigration Service that he would cover on behalf of A.M. And I believe that, ultimately, the defense agreed or stated that it would owe restitution of something like $5,200, which was the amount of money that Mr. Sukhtipyaroge recovered from A.M. in the course of A.M.'s employment at the restaurant. So on that, then, you would at least have waived the victim argument, correct? Well, I believe that that's not a waiver of the victim argument. How else could there be an agreement to pay that smaller amount if there's no victim? The defense did agree that he was a victim, but they did not agree upon a theory upon which he was a victim or a crime for which he was a victim. Yeah, they agreed to pay that smaller amount on the 1546 conviction. So I think you, well, I thought that's what you just said. They went through these machinations and they eventually narrowed it down to agreeing that he had to pay that smaller amount on the visa fraud. On the visa fraud, yes. So you have an admission, you have a waiver then, don't you, that visa fraud is a crime against property and that A.M. is a victim. At least those two issues. We have an agreement that he owed restitution in that amount. And the amount that was agreed upon represents an amount of money that is contrary to law. But does that really matter? I mean, I guess what I'm getting at is that the position, and I think maybe with Judge, I don't want to speak for him. But if you maintain throughout the proceedings that he, you know, that they owe that smaller amount and then the district court decides in accordance with the concessions that are made. At that point, what does it matter? You've essentially either induced the error or at least waived your right to contest the error. I don't believe that the defense waived the right to contest any restitution in excess of the $5,200 because it did argue that the A.M. was not entitled to certain kinds of wages or certain kinds of losses because A.M. was not a victim for purposes of those losses. The issue of whether he was a victim was raised and litigated and at the heart of the defense final position with the court was the fact that the A.M. was not a victim for all purposes. That A.M. was a victim only for purposes of Sotoporos' misstatements to the immigration people about his support, his willingness to support A.M. But the question of whether he agreed to pay wages to A.M. was not something that was waived by the defense. The defense contested that issue. On that issue, do you agree with the government that visa fraud is a continuing offense? I would say that Archer suggests that the visa fraud was complete upon the submission of the false statements to the immigration officers in Guatemala. How would that be true? The indictment alleges that it spanned a period of time. The statute refers to documents that are evidence of authorized stay or employment in the United States. Why would the fraud continue throughout the period when the person is supposedly authorized to stay or pursue employment in the U.S.? Could you address that? Even if this is a continuing fraud, into the period of time that A.M. remained in the United States illegally, A.M. was still participating in the fraud at that point. He was not going to the authorities. He was not seeking to return to Guatemala knowing that his visa was no longer any good. He was continuing to participate in the fraud at that point. And so he's still not a victim of the fraud. I don't see how he cannot be a victim if you waive the argument that there's a $5,000 restitution. Well, I guess, Your Honor, I would say that from a legal perspective, he was not a victim. There might have been an agreement by predecessor counsel that he was entitled to $5,000 on a theory. But you don't think that's a waiver of the legal issue is what you're saying. Right. Exactly, Your Honor, because they were still contesting the nature of or the extent to which he was a victim of the crime. Could you just clarify one thing for me, which is the $5,000 you keep speaking? I think I missed it. What exactly was the agreement for? What did it arise out of? The $5,000. What happened was when A.M. was working at the Suns restaurant, he was earning wages. And out of those wages, he made payments periodically to Mr. Sukdiparog. And those payments were meant to, as the evidence suggestion, were meant to reimburse Mr. Sukdiparog for monies that he spent on behalf of A.M. while he sponsored A.M. in the United States. And the total amount that was recovered by Mr. Sukdiparog using this set off was about $5,000, according to the defense counsel. Thank you. We have three and a half minutes left. Do you want to address quickly if we assume that visa fraud is a crime against property either because it is or because that issue is waived? And if we assume that A.M. is a victim, do you want to address whether the visa fraud caused, approximately caused, the property injury and the bodily injury that were the basis for the award? The cause issue is strictly limited under Archer and the other cases to situations in which the purported victim is not himself a participant in the crime. And the district court used an argument that but for the visa fraud, A.M. would not be in this country to be in a position of being forced to make payments to Sukdiparog or engage in sex. But the real analysis is that but for A.M.'s own criminal conduct, both in Guatemala in lying to the immigration officials and in remaining in the United States after his visa was no longer supported, was the but for the losses that he encountered, if any, while here. In other words, if the district court's argument is that he wouldn't have lost the wages and he wouldn't have been subjected to unwanted sex while he was here because of the visa fraud but for the visa fraud, it's also true that he would not have been subjected to those things but for his own engagement in the visa fraud before and after. That's kind of a reprise of your argument that he's not a victim as I understand it. That would support the argument that he's not a victim as well, yes. All right. Do you care to save your time for a bubble? I'll reserve the time that I have left, Your Honor. All right, you may. Ms. Provenzino, we'll hear from you. Thank you, Your Honor. Let's start where the parties are in agreement and in agreement before the district court. And I think that will very narrowly define the arguments left before this court. First, in the plea agreement, the parties agreed, the defendant did, to pay restitution. Secondly, the government and the defendant agreed that the Mandatory Victim Restitution Act applied to visa fraud. Third, that ASM is an identifiable victim. Fourth, that ASM is a victim because he has suffered a physical injury or pecuniary loss. Fifth, that the offense of visa fraud occurred over a two-year period. And finally, that the government and defendant agree that under the MVRA, the district court has statutory authority to order an amount of restitution that's consistent with the parties plea agreement. And that's what the court did. The defendant now is presenting a new argument before this court that the MVRA does not apply and that ASM is not a victim. Those were not presented to the district court. Those arguments are waived. There is nothing for this court to review. In fact, he agreed to this. This is sort of under the Olino and Teague line of questioning. He intentionally relinquished this right to challenge that issue of restitution. Did he waive the whole amount, though? Or did he only waive that this offense qualifies and that there was an identifiable victim, but at least preserve or not waive the question whether all of the amount is properly attributable to the offense? You are correct, Judge Colleton. The waiver is both that the ASM is a victim and that the MVRA applies. The only issue that was in dispute as presented to the district court and as referenced in the district court's restitution order was the amount. Counsel, let me ask you a question in that regard. So what about proximate cause as to restitution for bodily injury? Is that still an issue? Yes, Your Honor, I would agree that that is not waived. The district court took careful testimony. She heard from the victim for over two days in an evidentiary hearing. And she made careful findings consistent with the law and under Hughley that the visa fraud was the but-for cause of the bodily injury to the victim. She found that the defendants near total control over him caused significant fear there was ample evidence in the record including the testimony of the victim that she found credible that the defendant made threats to the victim that he would tell immigration or law enforcement and he used that near total control to get the victim to work at his restaurant and also to engage in unwanted and unconsented to sexual activity. And as a result of that fear, the district court found that the visa fraud was the but-for causation to the bodily injury. And that, as Your Honor has identified, that's the second set of restitution that would be relevant to lost wages that are prospective, the period of time that the victim's counselor testified he could only work part-time as well as the counseling costs and medication. So that would be the portion of restitution related to bodily injury. And the property offense, I think the court found that there was no attenuation. The but-for cause was direct. And it's very important to note that Mr. Stuptyarog made representations to the government in order to obtain the visa. Those representations were that he would provide for the victim's food, housing, school supplies, transportation, and tuition. And she found that it was that promise of education that caused the victim to come to the United States. Let me make sure I understand. So it's your position that the offense of conviction here, which is visa fraud, encompasses the sexual abuse and the non-payment of wages? As to both. So the non-payment of wages would be the property or the pecuniary loss to the victim. The sexual abuse and the resulting physical harm and bodily injury from that is the bodily injury portion. All of those, the court found based on credible testimony of the victim and others, were but for the visa fraud itself. Those representations made by the defendant to lure the victim to the United States, both for work and for the unwanted sexual coercion. Counsel, how do we distinguish between the harboring of an alien offense and a visa fraud offense? Because it's undisputed that restitution is not available for harboring of an alien. The court is correct. Restitution is not available for harboring under the MVRA. It would be available under other statutes and under plea agreement between the parties. The defendant himself identifies a close connection between the visa fraud and the harboring. In part, the representations that the defendant made to the U.S. government to get the visa fraud indicated that he would provide for the victim's housing. Part of the allowance of the visa fraud scheme to continue was the harboring, the sheltering, the concealing for law enforcement that the victim did by keeping him in a basement bedroom and in the basement of the restaurant. That allowed the visa fraud to be furthered. There certainly is a connection, but under the MVRA... I think the question is why does one count as a crime against property and the other one not? Or maybe that's my question. Why is one qualified under the MVRA and the other not? If they're interrelated the way you just described. And the government would argue they should both. The statute under the MVRA excludes any offenses that are not under Title 18. And the harboring is a Title 18. Because it's not a Title 18 offense. And that's correct. You're simply under the MVRA. Pre-Diama, there had been some findings that harboring itself was a crime of violence. It's no longer viewed that way under a categorical approach. But the government, in the benefit of the bargain and the plea, believes that restitution should be available under both. But the district court correctly found that the district court had statutory authority under the MVRA for the visa fraud in and of itself. I think it's important to note, as far as the waiver, I think Judge Strauss had earlier identified, every single filing in front of the court was consistent with the defendant's agreement that ASM was a victim and that the Mandatory Victim Restitution Act applied. That would be in the plea agreement in and of itself. That would be in the sentencing briefing, Document 146, that ASM is entitled to some restitution for work he actually performed. The only issue in dispute was the amount. So why did the district court, I was wondering about this, the district court does a full-throated discussion of offense against person, but says, I think at one point, that the identifiable victim point had been waived. It seems that the district court treated those as two different things. And I'm wondering why, there's some reason the district court might have had to treat those two things differently. The statute itself separates out the pecuniary loss or the offense against property, which was deemed to be the unearned wages, from the bodily injury. And different losses flow from that, including the cost of the counseling, any medications, any prospective or future wage loss. So under that statutory scheme, the district court carefully separated out the offenses against property and the offenses against bodily injury. Clearly, the defendant waived a right to challenge any of the restitution for the offense against property from the visa fraud, for the wages that were earned that weren't paid. It's arguable whether he completely waived the right to challenge the bodily injury. That seemed to be an issue that was in contest the amount, if any, that was owed to the third party, face-to-face counseling. So that makes two points. Counsel seems to make the point, though, that the $5,200 or $5,000, I don't remember the exact amount, is somehow different, because it's paying him back for things that he otherwise promised to provide. And so my question for you is, is there any merit to that in terms of how we treat the two issues on labor, the identifiable victim versus offense against property? Yes, the defendant is too narrowly viewing the visa fraud. The defendant is now, in its most recent claims, arguing that the visa fraud was an isolated one-time event that happened at the point in time in which the false representations were made to obtain the visa. That's not how the parties approached this or what the district court found to be the case. In fact, the superseding indictment identifies and the defendant pled to a visa fraud period over two years, which is relevant to the fact that he represented to the government that over the period of time in which ASM, the victim, were in the United States, he would pay for his schooling, his transportation, housing, and other things. So in looking at the visa fraud over a larger period of time, the district court's findings relating to the wage loss is appropriate. If we merely look at what was promised at the inception of getting the visa, a ledger was found upon executing a search warrant that seemed to identify costs that the defendant was charging the victim for that were in contravention to representations he made to the United States government to get the visa in and of itself. This is very distinct from Archer, where that was an opportunity to correct or supplement a new visa. What was pled to here and as charged was a visa fraud over a period of two years under which the victim would have been here as a student. Counsel, I'd like to go back to the court's determinations with regard to proximate cause for bodily injury. And I'm having trouble squaring the district court's findings with this court's decision in United States v. Rykow, R-E-I-C-H-O-W, it's a 2005 case. Can you address that? The district court, I think, made a very careful analysis of causation. She looked to an analogy of charges under sexual abuse statutes and others and found that the totality of the defendant's actions, where he exerted near total control over the victims, I think this is different from the case your honor is referencing, that that created fear. And the fear, there was ample evidence in the record of the victim's concern that the defendant would call immigration, would call law enforcement, could harm his family in the Dominican Republic. All of that created the culture of fear which led to the victim not having a choice to engage in the sexual acts with the defendant. It does seem that the conduct here is even further removed from the visa fraud than the conduct was in Rykow in the bank situation. The district court found that the conduct was not removed. There was no attenuation. It was direct causation both as to the property harm and as to the bodily injury. And she, at the time of sentencing, referenced that the defendant had leveraged his power over ASM, withholding money, withholding food, education, and other resources. There was testimony that his passport was also held. All of those things made it so he could not leave that situation. And so that's part of the total culture of control the defendant had over the victim that caused his losses. The government would assert that in addition to the plea agreement at the time of sentencing, the defendant made clear that ASM is entitled to some restitution for work he actually performed. And then all of the subsequent filings by the defendant, even those after the district court's order to show cause, documents 205 and 207, the defendant agreed that the Mandatory Victim Restitution Act applied. AM is an identifiable victim who has suffered a physical injury or pecuniary loss, that the court has the statutory authority to order an amount of restitution as to count to visa fraud. He did that again in his response to the government's brief relating to the show cause order 207 and indicated that the only issue was the amount to be awarded. Based on all of that... On the question on the bodily injury, you say the bodily injury was sexual abuse, is that how you would define it? Or was it some physical harm beyond the fact that he was subject to abuse? A good question, your honor. I would agree that the record most amply demonstrates the harm from the sexual abuse. There was also testimony and as cited in the government's brief, the victim sustained injury at work. He sustained injury from the sexual abuse. His treating counselor, William Carlson, substantiated that the climate of fear caused bodily injury to the victim, including a diagnosis of post-traumatic stress disorder. So there is evidence in their record of additional bodily injury and physical pain beyond the unconsented to sexual abuse. I see that my time is up. If the court has any additional questions, I will answer those. Otherwise, I will urge this court to affirm the amended judgment and the restitution order below. Very well. Thank you for your argument. Mr. Osgaard, we'll hear from you in rebuttal. Your honor, I wanted to address the question of proximate cause with respect to the physical injury and also with respect to the property loss. The cases hold that the injury, the loss is proximately caused only when the injury is a result of the particular offense conduct so that the offense conduct of visa fraud has to have within it intrinsically, in this particular case as alleged by the government, an intent or plan ahead of time to force him into labor or to force him into sexual situations. And there was no evidence of that. In fact, the evidence demonstrated from the victim's own testimony at the hearing that he was not employed immediately, that he was employed, in fact, by the defendant's son or the appellant's son, and that Mr. Sukta Parogi actually opposed, at least initially, AM's employment at the restaurant. So the evidence does not show that at the inception of the visa fraud conduct that Mr. Sukta Parogi had an intent to lure AM to the United States for purposes of sexual or forced labor. And that's the problem with the government's argument, is that those things were not proximately caused by what was demonstrated to be the visa fraud conduct. It was a standard, everyday kind of visa fraud where they lied to the immigration authorities about the purposes. All right. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.